**LAW OFFICES OF MARK R. SMITH, P.C.**
Mark R. Smith, Esq.
Nevada Bar No. 11872
8565 S. Eastern Ave. #150
Las Vegas, Nevada 89123
Telephone: (702) 518-7625
Facsimile:  (702) 475-6453
Email: mark@markrsmithlaw.com
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

**************************

| | |
|---|---|
| BTG180, LLC, a Nevada limited liability company, and RANDALL JEFFERS, an individual, | CASE NO.: 2:14-cv-00188-JCM-NJK |
| Plaintiffs, | **DEFAULT JUDGMENT AGAINST DEFENDANTS FUN CLUB USA, INC., ROBERT CRADDOCK, and SYLVIA SALGADO CRADDOCK** |
| vs. | |
| FUN CLUB USA, INC., a Florida corporation, ROBERT CRADDOCK, an individual, and SYLVIA SALGADO CRADDOCK, an individual, | |
| Defendants. | |

COMES NOW Plaintiffs, pursuant to this Court's Orders [Doc. #66 and Doc. #69], and hereby submit this Default Judgment against Defendants FUN CLUB USA, INC., ROBERT CRADDOCK, and SYLVIA SALGADO CRADDOCK. The defaults of said Defendants having been entered for failure to obey this Court's orders and/or otherwise failing to defend as to the Complaint, and it appearing that the Defaulted Defendant is not in the military service of the

United States and is not an infant or incompetent person, and good cause appearing therefore, the Court makes the following findings of fact:

Plaintiff BTG180, LLC ("BTG180") is a Nevada limited liability company with its principal offices located at 7470 Dean Martin Drive, Suite 102, Las Vegas, Clark County, Nevada. Plaintiff Randall Jeffers ("Jeffers") is a resident of Las Vegas, Clark County, Nevada and is the founder and Chief Executive Officer of BTG180. References hereafter to "Plaintiffs" will be to BTG180 and Jeffers jointly.

Defendant Fun Club USA, Inc. ("Fun Club") is a Florida corporation with its principal offices located at 1704 Baron Court, Suite 240, Port Orange, Volusia County, Florida. Defendants Robert Craddock ("Craddock") and Sylvia Salgado Craddock ("Sylvia Craddock") are husband and wife who reside in Port Orange, Volusia County, Florida. Craddock and Sylvia Craddock are self-employed owners of several enterprises, including Fun Club, at which they work together and which they operate together. Craddock is the founder and president of Fun Club.

Subject-matter jurisdiction for this Court exists: first, pursuant to 28 U.S.C. Section 1331, 1332 and 1338, because some of the causes of action herein arise under the United States trademark law commonly known as the Lanham Act, 15 U.S.C. Section 1125(a) and (d) and another cause of action arises under the Federal Computer Fraud and Abuse Act, 18 U.S.C. Section 1030; and second, pursuant to 28 U.S.C. Section 1332, by virtue of diversity of citizenship, with the amount at controversy exceeding $75,000. Under the former, the Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. Section 1367(a).

This Court has personal jurisdiction over the Defendants because they specifically engaged in conduct injurious to the Plaintiffs who were all located in the state of Nevada and Defendants did this with the full knowledge that Plaintiffs are in the state of Nevada, that their actions would have an effect in the state of Nevada, and that their actions would cause injury to Plaintiffs in the state of Nevada. Furthermore, Defendants have owned and operated a website on the World Wide Web known as *BTGlegal* that was accessible to residents of Nevada.

1 Furthermore, this Court has personal jurisdiction over Defendants Craddock and Fun Club because they entered into a contract with BTG180 in Nevada and agreed to perform services for BTG180 in Nevada. Venue is proper in the United States District Court for the District of Nevada pursuant to U.S.C. Section 1391. Venue lies in the unofficial Southern Division of this Court.

On or about August 12, 2013, BTG180 entered into a contract with Defendants Craddock and Fun Club in which Craddock and Fun Club agreed to perform marketing services for BTG180. The terms and conditions set forth in the contract were mutually agreed upon by the parties and, in reliance thereon, BTG180 paid Craddock and Fun Club and Craddock and Fun Club received and accepted payment from BTG180 of the sum of $50,000. Said sum was paid by BTG180 in advance for services to be performed by Craddock and Fun Club. Upon payment of that sum, Craddock and Fun Club became obligated to perform the marketing services which they had agreed to provide to BTG180.

BTG180 engaged Craddock and Fun Club to market the BTG180 network marketing opportunity to former affiliates of the Zeek Rewards network, which had provided products similar to those provided by BTG180. However, Craddock and Fun Club failed to provide the marketing services and, instead, attempted to induce BTG180 to promote and incorporate into its product line a so-called checking account draft processing system known as BTM. Craddock is the founder of a corporation known as BTM Check Draft Inc. which he and Sylvia Craddock operate and which provides the BTM service. Without Jeffers' consent, Craddock sent promotional material about BTM by email and/or by phone to BTG180 affiliates, falsely telling them that BTG180 had approved BTM and was incorporating BTM as one of BTG180's products. When informed of this, Jeffers stopped Craddock from sending out more such emails and/or making these phone calls and required him to send retractions to those who had received the original emails and/or phone calls.

During this time, there were other confrontations between Craddock and BTG180 executives as Craddock attempted to induce BTG180 to market other products for him. Craddock continued to defy Plaintiffs' requests to stop these actions; therefore, BTG180 stopped paying

Craddock and Fun Club. The Craddocks and Fun Club failed to perform the marketing services for which they had been contracted to provide and failed to deliver the services required.

The Craddocks and Fun Club breached their agreement with BTG180 including without limitation in the following particulars:

    a. Craddock and Fun Club failed to provide marketing services as required by the contract between the parties;

    b. Craddock and Fun Club engaged in activities that constituted a conflict of interest in that they wrongfully interfered with BTG180's economic relationships with its affiliates and attempted to disrupt and harm such relationships as more particularly set forth herein below; and

    c. Craddock and Fun Club misappropriated BTG's 180 trademark and trade secrets as more particularly set forth herein.

BTG180 is entitled to a judgment against Craddock and Fun Club for $50,000 paid by BTG180 to them as an advance payment and for all other damages caused by the breaches of contract set forth herein.

On or about December 10, 2013, Defendants sent out an email to BTG affiliates in which the subject line read "BTG Fraud. Email on Legal" and they addressed the affiliates as "BTG victims." In this email, the Defendants stated, among other things, that Jeffers had failed to act "in an honest and ethical manner" in operating BTG180. Defendants asked for monthly donations of twenty-five ($25.00) dollars a month from BTG180 affiliates so that Defendants could seek to get money returned which they had paid to BTG180 to become affiliates.

On or about December 11, 2013, the Defendants set up a website called *BTGlegal.com*. On this website, the Defendants falsely stated, among other things, that BTG owners (meaning among others, Jeffers) have criminal records, that BTG owners have a history of defrauding other people, and that a large number of BTG180 affiliates have asked for refunds.

On or about December 14, 2013, the Defendants sent out a second email to BTG180 affiliates in which they falsely stated, among other things, that BTG had been classified as a Ponzi scheme, that BTG180 would be investigated over the next 30 to 60 days, and that reports have been filed with the North Carolina Attorney General. In this email, the Defendants also "issued" a cease and desist edict, ordering BTG180 affiliates not to sign up any new affiliates because, if they did, they would be legally liable for inducing others to participate in a Ponzi scheme. The

email also stated for all currently active affiliates to immediately close their accounts with BTG180 or they would face "clawbacks" and "chargeback fees." The email further asked affiliates to register to complete the legal process. The email also encouraged affiliates to contact an ABC news reporter with the subject of the email being "They Took My Money and Used Kids to Lure me In" and requesting affiliates to reference Randy Jeffers, BTG180.com, the website and how false promises were made over and over.

BTG180's name is a distinctive and famous mark and was a distinctive and famous mark at the time Defendants registered the name *BTGlegal.com* and began operating a website for *BTGlegal.com*. Defendants wrongfully registered the domain name *BTGlegal.com* and began using it and operating a website for *BTGlegal.com* without the prior knowledge, permission or consent of BTG180 and continued to use said domain name and the website without BTG180's permission or consent. Defendants continued to use and trafficked in the domain name *BTGlegal.com* with the bad-faith intent to profit from its use by disrupting BTG180's relationships with its affiliates as part of their scheme to solicit money from those affiliates by disseminating false information. As a direct and proximate cause of Defendants conduct as set forth above, Plaintiffs have suffered monetary loss and irreparable injury to its business reputation and good will. Accordingly BTG180 is entitled to an injunction enjoining the Defendants from any use of the domain name *BTGlegal.com* or any form of the term "BTG180", pursuant to Section 3003 of the Anticybersquatting Act, 15 U.S.C. Section 1116(a). BTG180 is further entitled to a judgment awarding BTG180 all actual damages caused by the Defendants' wrongful acts as set forth above or, in the alternative, statutory damages of not less than $1,000 and not more than $100,000, as the Court considers just, pursuant to Section 3003(h) of the Anticybersquatting Act, 15 U.S.C. $1117(a), (d).

Defendants have infringed BTG180's trademark of its name as follows: The domain name *BTGlegal.com* used by Defendants implies that it is an official website for BTG180, causing BTG180's affiliates to believe that it is a website set up by BTG180 to help them, when, in fact, it is not and, in reality, is a website hostile to BTG180. This wrongful use of BTG 180's trademark

in the domain name used by Defendants has caused problems and confusion for BTG180's affiliates and, therefore, for Jeffers and BTG180.

Defendants' wrongful use of the domain name *BTGlegal.com* is a trademark infringement under federal trademark protection laws as set forth in Section 43 of the Lanham Act, 15 U.S.C. Section 1125(a)(5) and 15 U.S.C. Section 1116(a). BTG180 is entitled to an injunction enjoining the Defendants from any use of the domain name *BTGlegal.com* or any form of the term "BTG180", pursuant to Section 43 of the Lanham Act, 15 U.S.C. Section 1125(c)(5).

Defendants have further infringed BTG180's common law trademark of its name. This wrongful use of BTG 180's trademark in the domain name used by Defendants also has caused problems and confusion for BTG180's affiliates and, therefore, for BTG180. Defendants infringed BTG180's trademark as a part of a scheme to interfere with BTG180's affiliates and BTG180's business.  Defendants' acts are a wrongful infringement of BTG180's trademark under the common law of the state of Nevada. BTG180 is entitled to a judgment against Defendants awarding BTG180 damages caused by the wrongful acts set forth above.

Before and after BTG180 entered into a services contract with Craddock and Fun Club, Craddock spent a substantial amount of time at BTG180's offices. During such time, without BTG180's consent or permission, Craddock used a computer or several computers at BTG180's offices to access and download and/or retain contact information of BTG180's affiliates. The names and contact information of BTG180's affiliates ("Affiliate Lists") are confidential and proprietary information of BTG180, constituting a valuable trade secret of BTG180. Defendants used the wrongfully-obtained Affiliate Lists to send emails to BTG180's affiliates as set forth above, all for the purpose of harming BTG180 by disrupting and ruining its relationships with its affiliates. The wrongful use of BTG180's computers to obtain confidential and proprietary information and then to use that information to send out emails and/or make phone calls to interfere with BTG180's relationships with its affiliates violates the Federal Computer Fraud & Abuse Act, 18 U.S.C. Section 1030. BTG180 is entitled to a judgment against Defendants awarding BTG180 damages caused by the wrongful acts set forth above.

1   The BTG180 Affiliate Lists constitute a trade secret protected under the Nevada Uniform Trade Secrets Act, NRS 600A. Because Defendants Craddock and Fun Club had contracted to provide marketing services for BTG180, had pledged in its agreement with BTG180 to keep BTG180's trade secrets confidential, and were obligated to act in good faith and fair-dealing thereunder, said Defendants had a duty to maintain in confidence all BTG180's trade secrets they may have encountered while working with BTG180.  Craddock and Fun Club breached their duty to hold the BTG180 Affiliate Lists as confidential and proprietary information belonging to BTG180 and misappropriated them while working with BTG180 and then, along with Defendant Sylvia Craddock, wrongfully used them to send out emails and/or make phone calls to interfere with BTG180's relationships with its affiliates.  Defendants' breach by Craddock and Fun Club of their duty of confidence and their use of the Affiliate Lists as part of a scheme to interfere with BTG180's affiliates violates the Nevada Uniform Trade Secrets Act (NRS 600A.030) as a misappropriation of another's trade secret. BTG180 is entitled to an injunction enjoining Defendants from any use of its trade secrets as allowed by NRS 600.040. BTG180 is entitled to a judgment against Defendants awarding damages caused by the wrongful acts set forth above. BTG is also entitled to a judgment against Defendants for punitive damages in an amount equal to twice the amount of actual damages, as allowed by NRS 600A.050. BTG180 is further entitled to a judgment against Defendants for its attorney fees, as allowed under NRS 600A.060.

BTG180's Affiliate Lists are not of public knowledge, and are highly confidential and proprietary in nature, and are also subject to common law trade secret protection.  Such information is of high value, because it serves as the basis for BTG180 to develop and maintain its business.  BTG180 compiled this information itself for its use and for no one else's use and, therefore, has a right to use and enjoy this confidential information, without undue interference or misappropriation. Defendants misappropriated the Affiliate Lists and wrongfully used them as a part of a scheme to interfere with BTG180's affiliates and ruin BTG180's business.  The Defendants' acts are wrongful misappropriations of BTG180's trade secrets under the common law of the state of Nevada. BTG180 is entitled to an injunction enjoining the Defendants from

wrongfully misappropriating BTG180's trade secrets. BTG180 is further entitled to a judgment against Defendants awarding BTG180 damages caused by their wrongful acts set forth above.

At all times relevant herein, Defendants knew of BTG180's relationships with its affiliates and of the economic importance of such relationships to BTG180 as well as to the affiliates. Defendants intentionally interfered with those economic relationships, attempted to disrupt and damage those relationships, and sought to induce affiliates to terminate the relationships by the actions alleged herein above. Defendants' actions as set forth herein above were done for the improper purposes of disrupting and damaging BTG180's relationships with its affiliates and of attempting to induce affiliates to terminate their relationships with BTG180. Defendants' actions as set forth herein above constituted improper means, causing significant damage to BTG180. BTG180 is entitled to an injunction enjoining the Defendants from wrongfully interfering with BTG's economic relationships with its affiliates. BTG180 is further entitled to a judgment against Defendants awarding BTG180 damages caused by the Defendants' wrongful acts set forth above and for punitive damages in an amount equal to twice the awarded damages.

Defendants sent emails to BTG180's affiliates and set up a website known as *BTGlegal.com* which was targeted to BTG180's affiliates, but which was available for anyone in the world to read in which Defendants stated, among other things, that Jeffers had not conducted himself in an honest and ethical manner in operating BTG180, that Defendants were filing action against BTG180 in North Carolina, that BTG180 and Jeffers had broken promises to affiliates, that Jeffers and other principals in BTG180 have criminal records, that Jeffers and other principals in BTG180 have a history of defrauding people, that a large number of BTG180 affiliates have asked for refunds, that BTG180 has been classified as a Ponzi scheme, that BTG180 was to be investigated, that reports about BTG180 had been filed with the North Carolina Attorney General's office, that legal action similar to the action taken by the North Carolina Attorney General against the business known as Zeek Rewards would be taken against BTG180, that BTG180 affiliates could face criminal or other legal charges for signing up new affiliates, and that all BTG180 affiliates were under a cease and desist order to stop doing business with BTG180. All of the Defendants' statements listed above are false and were made by

Defendants to cause injury and harm to Plaintiffs and their business and economic relationships with BTG180's affiliates. Plaintiffs have been damaged by Defendants' defamatory statements and are entitled to a judgment against Defendants for all damages caused by these defamatory statements and for punitive damages in an amount equal to twice the amount of damages.

On or about August 24, 2012, Craddock filed Articles of Incorporation with the Florida Secretary of State to organize Fun Club as a corporation. In December, 2013, Craddock and Sylvia Craddock started soliciting through Fun Club for monetary donations from BTG180's affiliates, again promising to use the money raised from such donations to take legal action on behalf of said affiliates against Jeffers and BTG180's the owners and operators. After raising money in this manner, Defendants never took the legal action promised on behalf of BTG180's affiliates, but instead, Defendants Robert Craddock and Sylvia Craddock retained for themselves all such money raised.

Defendant Fun Club has no employees, and Robert and Sylvia Craddock are the only persons who ever undertook to act in the name of or on behalf of Fun Club. The Craddock's exercised complete control over the activities and operations of Fun Club, never capitalized Fun Club, and have failed to adequately keep funds received by Fun Club separate from their own money. The Craddocks treated all such funds as their personal money. Furthermore, Defendants have not maintained corporate records, complied with corporate governance, or kept adequate books and records for Fun Club. Fun Club has existed as a non-capitalized shell corporation with no identity independent of the Craddocks, which they have used solely as a shield for themselves to shake-down affiliates of multi-level marketing networks, including without limitation, BTG180, and to get donations from such affiliates, promising to use the money to take legal action on their behalf against the multi-level marketing companies. The Craddocks never used Fun Club for any legitimate business purpose and have pocketed for themselves the money raised using Fun Club to solicit donations. Accordingly, Fun Club is the alter ego of Craddock and Sylvia Craddock and each, therefore, are liable jointly and severally for the claims alleged herein.

In applying the aforementioned established and proven facts to relief sought by the Plaintiff in its Complaint, the Court makes the following conclusions:

1. *Cybersquatting (15 U.S.C. Section 1125(d))*

BTG180's name is a distinctive and famous mark and was a distinctive and famous mark at the time Defendants registered the name *BTGlegal.com* and began operating the website *BTGlegal.com*. Defendants registered the domain name *BTGlegal.com* and began using it and operating a website for *BTGlegal.com* without the prior knowledge, permission or consent of BTG180 and continued to use said domain name and the website without BTG180's permission or consent. Defendants continued to use, and trafficked, in the domain name *BTGlegal.com* with the bad-faith intent to profit from its use by disrupting BTG180's relationships with its affiliates as part of their scheme to solicit money from those affiliates by disseminating false information. As a direct and proximate cause of Defendants conduct as set forth above, Plaintiffs have suffered and will continue to suffer monetary loss and irreparable injury to its business reputation and good will. BTG180 is entitled to an injunction enjoining the Defendants from any use of the domain name *BTGlegal.com* or any form of the term "BTG180", pursuant to Section 3003 of the Anticybersquatting Act, 15 U.S.C. Section 1116(a). BTG180 is further entitled to a judgment awarding BTG180 damages caused by the Defendants' wrongful acts as set forth above or, in the alternative, statutory damages of not more than $100,000, as the Court considers just, pursuant to Section 3003(h) of the Anticybersquatting Act, 15 U.S.C. Section 1117(a), (d).

The Court awards the sum of **$10,000.00** against Defendants and in favor of Plaintiffs for Defendants' wrongful and intentional violation of the Anticybersquatting Act, 15 U.S.C. Section 1117(d).

2. *Trademark Infringement - 15 U.S.C. Section 1125(a)*

Defendants have infringed BTG180's trademark of its name as follows: The domain name *BTGlegal.com* used by Defendants implies that it is an official website for BTG180, causing BTG180's affiliates to believe that it is a website set up by BTG180 to help them, when, in fact, it is not and, in reality, is a website hostile to BTG180. This wrongful use of BTG 180's trademark in the domain name used by Defendants has caused problems and confusion for BTG180's affiliates and, therefore, for Jeffers and BTG180. Defendants' wrongful use of the domain name *BTGlegal.com* is a trademark infringement under federal trademark protection laws as set forth in

Section 43 of the Lanham Act, 15 U.S.C. Section 1125(a)(5) and 15 U.S.C. Section 1116(a). BTG180 is entitled to an injunction enjoining the Defendants from any use of the domain name *BTGlegal.com* or any form of the term "BTG180", pursuant to Section 43 of the Lanham Act, 15 U.S.C. Section 1125(c)(5).

The Court awards the sum of **$10,000.00** against Defendants and in favor of Plaintiffs for Defendants' wrongful and intentional violation of Section 43 of the Lanham Act, 15 U.S.C. Section 1125(a)(5) and 15 U.S.C. Section 1116(a).

3. ***Trademark Infringement (Common Law)***

Defendants have infringed BTG180's common law trademark of its name as follows: The domain name *BTGlegal.com* used by Defendants implies that it is an official website for BTG180, causing BTG180's affiliates to believe that it is a website set up by BTG180 to help them, when, in fact, it is not and, in reality, is a website hostile to BTG180. This wrongful use of BTG 180's trademark in the domain name used by Defendants has caused problems and confusion for BTG180's affiliates and, therefore, for BTG180. Defendants infringed BTG180's trademark as a part of a scheme to interfere with BTG180's affiliates and BTG180's business.  Defendants' acts are a wrongful infringement of BTG180's trademark under the common law of the state of Nevada. BTG180 is entitled to a judgment awarding BTG180 damages caused by the Defendants' wrongful acts of infringing BTG180's trademark as set forth above.

The Court awards the sum of **$10,000.00** against Defendants and in favor of Plaintiffs for Defendants' wrongful and intentional infringement of BTG180's trademark under the common law of the state of Nevada.

4. ***Wrongful Use of Computer (18 U.S.C. Section 1830)***

Without BTG180's consent or permission, Defendant Craddock used a computer or several computers at BTG180's offices to access and download and/or retain contact information of BTG180's affiliates. The names and contact information of BTG180's affiliates ("Affiliate Lists") are confidential and proprietary information of BTG180, constituting a valuable trade secret of BTG180. Defendants used the wrongfully-obtained Affiliate Lists to thereafter send emails to BTG180's affiliates for the purpose of harming BTG180 by disrupting and ruining its

relationships with its affiliates. Defendant's wrongful use of BTG180's computers to obtain confidential and proprietary information and then to use that information to send out emails and/or make phone calls to interfere with BTG180's relationships with its affiliates violates the Federal Computer Fraud & Abuse Act, 18 U.S.C. Section 1030. BTG180 is entitled to a judgment against Defendants awarding BTG180 damages caused by the wrongful acts set forth above.

The Court awards the sum of **$10,000.00** against Defendants and in favor of Plaintiffs for Defendants' wrongful and intentional violation of the Federal Computer Fraud & Abuse Act, 18 U.S.C. Section 1030.

5. *Misappropriation of Trade Secret (NRS 600A.030 and Common Law)*

BTG180's Affiliate Lists constitute a trade secret protected under the Nevada Uniform Trade Secrets Act, NRS 600A. BTG180's Affiliate Lists are not of public knowledge, and are highly confidential and proprietary in nature, and are also subject to common law trade secret protection.  Such information is of high value, because it serves as the basis for BTG180 to develop and maintain its business.  BTG180 compiled this information itself for its use and for no one else's use and, therefore, has a right to use and enjoy this confidential information, without undue interference or misappropriation. Defendants misappropriated the Affiliate Lists and wrongfully used them as a part of a scheme to interfere with BTG180's affiliates and ruin BTG180's business. Defendants were obligated to act in good faith and fair-dealing and had a duty to maintain in confidence all BTG180's trade secrets they may have encountered while working with BTG180.  Defendants misappropriated the Affiliate Lists and wrongfully used them as a part of a scheme to interfere with BTG180's affiliates and ruin BTG180's business.

Defendants breached their duty to hold the BTG180 Affiliate Lists as confidential and proprietary information belonging to BTG180 and misappropriated them while working with BTG180 and then wrongfully used BTG180's trade secrets to send out emails and/or make phone calls to interfere with BTG180's relationships with its affiliates.  Defendants' breach of their duty of confidence and their use of the Affiliate Lists as part of a scheme to interfere with BTG180's affiliates violates the Nevada Uniform Trade Secrets Act (NRS 600A.030) as a misappropriation of another's trade secret. BTG180 is entitled to an injunction enjoining Defendants from any use

of its trade secrets as allowed by NRS 600.040. The Defendants' acts are also wrongful misappropriations of BTG180's trade secrets under the common law of the state of Nevada.

BTG180 is entitled to a judgment against Defendants awarding damages caused by the wrongful acts set forth above. BTG is also entitled to a judgment against Defendants for punitive damages in an amount equal to twice the amount of damages, as allowed by NRS 600A.050. BTG180 is further entitled to a judgment against Defendants for its attorney fees, as allowed under NRS 600A.060.

The Court awards the sum of **$10,000.00** against Defendants and in favor of Plaintiffs for Defendants' wrongful and intentional violation of NRS 600A.030. The Court further awards the sum of **$20,000.00** as punitive damages against Defendants and in favor of Plaintiffs, pursuant to NRS 600A.050.

   6. **Wrongful Interference with Economic Relations**

Defendants knew of BTG180's relationships with its affiliates and of the economic importance of such relationships to BTG180 as well as to the affiliates. Defendants intentionally interfered with those economic relationships, attempted to disrupt and damage those relationships, and sought to induce affiliates to terminate the relationships. Defendants' actions as set forth herein above were done for the improper purposes of disrupting and damaging BTG180's relationships with its affiliates and of attempting to induce affiliates to terminate their relationships with BTG180. Defendants' actions as set forth herein caused significant damage to BTG180. BTG180 is entitled to an injunction enjoining the Defendants from wrongfully interfering with BTG's economic relationships with its affiliates. BTG180 is entitled to a judgment against Defendants awarding BTG180 damages caused by the Defendants' wrongful acts set forth above and for punitive damages in an amount equal to twice the amount of actual damages.

The Court awards the sum of **$10,000.00** against Defendants and in favor of Plaintiffs for Defendants' wrongful and intentional Wrongful Interference with Plaintiffs' Economic Relations. The Court further awards the sum of **$20,000.00** as punitive damages against Defendants and in favor of Plaintiffs.

### 7. Breach of Contract

On or about August 12, 2013, BTG180 entered into a contract with Defendants Craddock and Fun Club in which Craddock and Fun Club agreed to perform marketing services for BTG180. The terms and conditions set forth in the contract were mutually agreed upon by the parties and, in reliance thereon, BTG180 paid Craddock and Fun Club and Craddock and Fun Club received and accepted payment from BTG180 of the sum of $50,000. Said sum was paid by BTG180 in advance for services to be performed by Craddock and Fun Club. Upon payment of that sum, Craddock and Fun Club became obligated to perform the marketing services which they had agreed to provide to BTG180.

Defendants failed to perform the marketing services for which they had been contracted to provide and failed to deliver the services required. Defendants breached their agreement with BTG180, including without limitation by, failing to provide marketing services as required by the contract; engaging in activities that constituted a conflict of interest in that they wrongfully interfered with BTG180's economic relationships with its affiliates and attempted to disrupt and harm such relationships; and misappropriating BTG's 180 trademark and trade secrets. BTG180 is entitled to a judgment against Craddock and Fun Club for $50,000 paid by BTG180 to them as an advance payment and for all other damages caused by the breaches of contract.

The Court awards the sum of **$50,000.00** against Defendants and in favor of Plaintiffs for Defendants' breach of the contract entered into between Plaintiffs and Defendants.

### 8. Defamation

Defendants sent emails to BTG180's affiliates and set up a website known as *BTGlegal.com* which was targeted to BTG180's affiliates, but which was available for anyone in the world to read in which Defendants stated, among other things, that Jeffers had not conducted himself in an honest and ethical manner in operating BTG180, that Defendants were filing action against BTG180 in North Carolina, that BTG180 and Jeffers had broken promises to affiliates, that Jeffers and other principals in BTG180 have criminal records, that Jeffers and other principals in BTG180 have a history of defrauding people, that a large number of BTG180 affiliates have asked for refunds, that BTG180 has been classified as a Ponzi scheme, that

BTG180 was to be investigated, that reports about BTG180 had been filed with the North Carolina Attorney General's office, that legal action similar to the action taken by the North Carolina Attorney General against the business known as Zeek Rewards would be taken against BTG180, that BTG180 affiliates could face criminal or other legal charges for signing up new affiliates, and that all BTG180 affiliates were under a cease and desist order to stop doing business with BTG180.

The aforementioned statements by Defendants were false and were made to cause injury and harm to Plaintiffs and their business and economic relationships with BTG180's affiliates. Defendants' false and defamatory statements regarding Plaintiffs and their business reputation constitute defamation per se. Plaintiffs have been damaged by Defendants' defamatory statements and are entitled to a judgment against Defendants for damages caused by these defamatory statements and for punitive damages in an amount equal to twice the amount of those damages.

The Court awards the sum of **$10,000.00** against Defendants and in favor of Plaintiffs for Defendants' false and defamatory statements wrongfully and intentionally made against Plaintiffs. The Court further awards the sum of **$20,000.00** as punitive damages against Defendants and in favor of Plaintiffs.

### 9. Piercing the Corporate Veil - Alter Ego

On or about August 24, 2012, Craddock filed Articles of Incorporation with the Florida Secretary of State to organize Fun Club as a corporation. In December, 2013, Craddock and Sylvia Craddock started soliciting through Fun Club for monetary donations from BTG180's affiliates, again promising to use the money raised from such donations to take legal action on behalf of said affiliates against Jeffers and BTG180's the owners and operators. After raising money in this manner, Defendants never took the legal action promised on behalf of BTG180's affiliates, but instead, Defendants Robert Craddock and Sylvia Craddock retained for themselves all such money raised.

Defendant Fun Club has no employees, and Robert and Sylvia Craddock are the only persons who ever undertook to act in the name of or on behalf of Fun Club. The Craddock's exercised complete control over the activities and operations of Fun Club, never capitalized Fun

Club, and have failed to adequately keep funds received by Fun Club separate from their own money. The Craddocks treated all such funds as their personal money.

Defendants have not maintained corporate records, complied with corporate governance, or kept adequate books and records for Fun Club. Fun Club has existed as a non-capitalized shell corporation with no identity independent of the Craddocks, which they have used solely as a shield for themselves to shake-down affiliates of multi-level marketing networks, including without limitation, BTG180, and to get donations from such affiliates, promising to use the money to take legal action on their behalf against the multi-level marketing companies. The Craddocks never used Fun Club for any legitimate business purpose and have pocketed for themselves the money raised using Fun Club to solicit donations.

Accordingly, Fun Club is the alter ego of Craddock and Sylvia Craddock and each, therefore, are liable jointly and severally for the damages awarded in this action.

*10. Attorney's Fees and Costs; and Pre-Judgment and Post-Judgment Interest*

Plaintiffs are entitled to recover their attorney's fees and costs as the prevailing party, pursuant to NRS 18.010 and further pursuant to NRS 600A.060 in an amount to be determined separately upon the Court's consideration of Plaintiff's application therefor. Plaintiffs are further entitled to pre-judgment interest on their contract damages, in the amount of **$6,070.50**, pursuant to NRS 99.040(1), from February 27, 2014 (when Defendants filed their Answer) through July 1, 2016. This pre-judgment interest amount was calculated as follows: $50,000.00 [contract damages] multiplied by 0.0525 [5.25% pursuant to NRS99.040(1)] = $2,625.00 (per annum) divided by 365 days = $7.19 per day. There have been 855 days that passed between February 27, 2014 (when Defendants Answered the Complaint) and July 1, 2016 (when this Judgment was submitted). Accordingly, the daily interest amount of $7.91 multiplied by 855 days equals $6,070.50. Plaintiff is further entitled to post-judgment interest at the rate of 5.25%, pursuant to NRS99.040(1), which shall continue to accrue until such time that this Judgment is satisfied.

/ / /

/ / /

/ / /

**JUDGMENT**

Based upon the foregoing findings and conclusions of this Court, Plaintiffs are entitled to judgment in the amount of **$10,000.00** for Defendants' wrongful and intentional violation of the Anticybersquatting Act, 15 U.S.C. Section 1117(d).

Plaintiffs are further entitled to judgement in the amount of **$10,000.00** for Defendants' wrongful and intentional violation of Section 43 of the Lanham Act, 15 U.S.C. Section 1125(a)(5) and 15 U.S.C. Section 1116(a).

Plaintiffs are further entitled to judgement in the amount of **$10,000.00** for Defendants' wrongful and intentional infringement of BTG180's trademark under the common law of the state of Nevada.

Plaintiffs are further entitled to judgement in the amount of **$10,000.00** for Defendants' wrongful and intentional violation of NRS 600A.030, plus **$20,000.00** in punitive damages related to said wrongful and intentional violations.

Plaintiffs are further entitled to judgement in the amount of **$10,000.00** for Defendants' wrongful and intentional Wrongful Interference with Plaintiffs' Economic Relations, plus **$20,000.00** as punitive damages for said wrongful and intentional conduct**.**

Plaintiffs are further entitled to judgement in the amount of **$50,000.00** in contract damages for Defendants' breach of the contract entered into between the parties.

Plaintiffs are further entitled to judgement in the amount of **$10,000.00** for Defendants' false and defamatory statements wrongfully and intentionally made against Plaintiffs, plus **$20,000.00** as punitive damages for Defendants' wrongful and intentional conduct in making said false and defamatory statements about Plaintiffs.

Plaintiffs are further entitled to pre-judgment interest on their contract damages, in the amount of **$6,070.50**.

Based upon the foregoing, Plaintiffs are entitled to judgement in the **total amount of $176,070.50,** awarded jointly and severally against Defendants and in favor of Plaintiffs, with interest accruing at the legal rate pursuant to Nevada law until such time that said Judgment is satisfied.

1
2
3
4
5
6
   Accordingly, **IT IS ORDERED, ADJUDGED AND DECREED** that default judgment is hereby entered jointly and severally against Defendants FUN CLUB USA, INC., ROBERT CRADDOCK, and SYLVIA SALGADO CRADDOCK, and awarded in favor of Plaintiffs BTG180, LLC and RANDALL JEFFERS in the total amount of **$176,070.50**, with post-judgment interest continuing to accrue at the legal rate pursuant to Nevada law until such time that said judgment is satisfied.

7
8
   **IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that Plaintiffs are the prevailing party in this action.

9
   **IT IS SO ORDERED, ADJUDGED AND DECREED**.

10
   Dated December 9, 2016.

11
12
13
   _____
   Honorable United States District Court Judge

14
15
16
17

18
Respectfully submitted by:

19
**LAW OFFICES OF MARK R. SMITH, P.C.**

20
By:   */s/ Mark R. Smith*_____
21
      Mark R. Smith, Esq.
      Nevada Bar No. 11872
22
      8565 S. Eastern Avenue #150
      Las Vegas, Nevada 89123
23
      Telephone: (702) 518-7625
24
      Facsimile: (702) 475-6453
      Email: mark@markrsmithlaw.com
25
      *Attorney for Plaintiffs*

26
27
28